**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-10099 |
| Plaintiff - Appellee, | D.C. No. 2:06-cr-00379-LDG-GWF |
| v. | |
| ROBERT MYRON LATHAM, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Lloyd D. George, District Judge, Presiding

Submitted May 11, 2010[**]
San Francisco, California

Before: RYMER and McKEOWN, Circuit Judges, and FAWSETT, Senior District
Judge.[***]

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]     The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable Patricia C. Fawsett, Senior United States District
Judge for the Middle District of Florida, sitting by designation.

Robert Latham ("Latham") appeals from the district court's judgment at sentencing after a jury found him guilty of various counts related to child pornography. Latham assigns errors to both his convictions and sentences. We affirm.

In 2005, an undercover child pornography investigation yielded an Internet Protocol ("IP") address that FBI agents traced to Latham's brother. The agents consulted with the Internet service provider and independently confirmed Latham's brother's address using public records and surveillance. The agents thus had probable cause to support a warrant authorizing a search of the residence for computers used to share and store child pornography.

The possibility of "spoofing"—using special software to make it appear that one is using a specific router when in fact one is secretly using a different router—does not undermine the affidavit supporting the warrant. See United States v. Craighead, 539 F.3d 1073, 1081 (9th Cir. 2008) (holding that probable cause is not defeated by omissions from supporting affidavits of "statements . . . relating to IP spoofing" or "Internet hijacking"). The district court did not err in denying Latham's motion to suppress.

Latham's contention that the affidavit's information was stale is waived because he did not raise it in his motion to suppress below. See United States v.

2

Murillo, 288 F.3d 1126, 1135 (9th Cir. 2002) (explaining that failure to raise a particular ground in support of a motion to suppress constitutes waiver and "places the issue beyond the scope of our ability to review for plain error"). Even if we were to interpret the staleness argument as a variation of the ground Latham raised in his motion to suppress, given the nature of the crime, the three-month delay did not render the information stale. See United States v. Lacy, 119 F.3d 742, 746 (9th Cir. 1997).

To assess Latham's claim that he was "in custody" during his interview, we review the totality of facts and ask whether a "reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave." United States v. Booth, 669 F.2d 1231, 1235 (9th Cir. 1981).

Latham was interviewed in his bedroom with the door open and within earshot of his brother. All parties agree that no threats were made during the search and that a conversational tone was used throughout. Latham was informed on at least two occasions that he was free to leave. He testified that one reason he did not do so is that he did not want to leave his brother alone—suggesting that he stayed because he preferred to, not because he felt compelled to remain. Latham's nephew, on the other hand, did exercise his right to leave. This is further indication that it was unreasonable for Latham to think he could not leave as well.

3

The district court did not err in finding that Latham was not "in custody" during his interview.

Latham argues that the government destroyed two desktop computers that it seized from his brother's residence, thereby violating his due process rights by failing to preserve possibly exculpatory evidence. The government disputes this characterization of the evidence. Under California v. Trombetta, the duty to preserve evidence is:

> limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

467 U.S. 479, 488-89 (1984) (footnote and citation omitted). There is no due process violation for failure to preserve potentially useful evidence unless there is a showing of bad faith. Arizona v. Youngblood, 488 U.S. 51, 58 (1988).

Latham has not established to any reasonable degree that there might have been exculpatory evidence found on the other desktop computers. Nor did he establish bad faith. The evidence found on Latham's laptop computer was sufficient to support his convictions and independent from any evidence that might

4

have been discovered on the desktop computers.  The district court did not err in failing to dismiss the indictment on these grounds.

"We review de novo whether a sentence violates the Eighth Amendment." United States v. Meiners, 485 F.3d 1211, 1212 (9th Cir. 2007).  To sustain an Eighth Amendment violation, there must be a threshold determination leading to the inference that the sentences are grossly disproportionate to the crime. Harmelin v. Michigan, 501 U.S. 957, 1005 (1991) (Kennedy, J., concurring in part and concurring in the judgment).  The record supports no such inference.

In reviewing the sentencing decision, we first "consider whether the district court committed significant procedural error, then we consider the substantive reasonableness of the sentence."  United States v. Carty, 520 F.3d 984, 993 (9th Cir. 2008).

The district court's imposition of the statutory maximum sentences on Counts 2 and 3 was neither procedurally erroneous nor substantively unreasonable.[1]  The district court used the sentencing guidelines as a reference point to determine that Latham's offense level exceeded the highest level listed on the sentencing table.  Latham has identified no procedural errors, and both sentences fall within the guidelines range.  Considering the totality of the

---

[1]Latham's sentence on Count 1 was statutorily mandated.

5

circumstances, the sentences were not unreasonable.  See Carty, 520 F.3d at 988

(explaining that "a correctly calculated Guidelines sentence will normally not be

found unreasonable on appeal").

Latham's double jeopardy claim is raised for the first time on appeal; we

review for plain error.  United States v. Olano, 507 U.S. 725, 732 (1993).[2]  Latham

was convicted of both Receipt of Child Pornography (Count 3) and Possession of

Child Pornography (Count 4).  The two Counts were based on the same images.

Because possession is a lesser-included offense of receipt, the district court plainly

erred by imposing convictions on both counts.  United States v. Davenport, 519

F.3d 940, 947 (9th Cir. 2008).

The remedy for this error is generally to remand to the district court so that it

can decide, in its discretion, which conviction to vacate.  Whichever conviction is

vacated can be reinstated without prejudice if the other conviction is overturned on

direct or collateral review.  Id. at 948.  Here, however, the district court recognized

that it should not impose a sentence on both counts and declined to impose a

sentence on Count 4.  Given that the district court seems to have been aware of the

Double Jeopardy problem and that it chose to impose a sentence only on Count 3,

---

[2]Latham's due process claim of judicial bias is also raised for the first time on appeal.  We find no evidence in the record of bias or hostility, and thus no plain error.

6

remand is unnecessary. We therefore vacate the conviction under Count 4 without prejudice.

**AFFIRMED IN PART and VACATED IN PART**.